1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN A. GOODMAN,

                    Plaintiff,

          v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

Case No. C16-285-JCC

**ORDER REVERSING AND
REMANDING CASE FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS**

          Susan A. Goodman seeks review of the denial of her application for Disability Insurance

Benefits.  Ms. Goodman contends the ALJ erred by misevaluating: (1) the Department of

Veterans Affairs' (VA) disability rating; (2) the medical evidence; (3) her own testimony; and

(4) the lay evidence.  Dkt. 9 at 2.  Ms. Goodman also contends that new evidence, in the form of

a new VA disability determination, submitted to and considered by the Appeals Council

undermines the ALJ's decision.  *Id.*  Ms. Goodman contends that in light of these errors and the

new evidence submitted to the Appeals Council, the ALJ's residual functional capacity (RFC)

determination fails to account for all of her limitations and is not supported by substantial

evidence.[1]  *Id.*  Ms. Goodman contends that this matter should be remanded for an award of

---

[1] Ms. Goodman also argued, alternatively, that the Court should remand this case for a new hearing
pursuant to sentence six of 42 U.S.C. § 405(g) based on the Commissioner's failure to file the complete

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

benefits or, alternatively, for further administrative proceedings. Dkt. 9 at 19. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In August 2012, Ms. Goodman applied for benefits, alleging disability as of June 29, 2012. Tr. 47, 184-189. Ms. Goodman's application was denied initially and on reconsideration. Tr. 47, 98-122. After the ALJ conducted a hearing on April 15, 2014, the ALJ issued a decision finding Ms. Goodman not disabled. Tr. 47-59.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Goodman has not engaged in substantial gainful activity since June 29, 2012, the alleged onset date.

**Step two:** Ms. Goodman has the following severe impairments: major depressive disorder, anxiety disorder, and posttraumatic stress disorder (PTSD).

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Goodman can perform a full range of work at all exertional levels. She can perform simple routine tasks. She can have superficial, infrequent contact with coworkers. She should have no contact with the public. She can have few, if any, changes in work routine or setting.

**Step four:** Ms. Goodman cannot perform past relevant work.[4]

record with the Court. Dkt. 17 at 10. Specifically, Ms. Goodman pointed out that two pages of the hearing transcript were missing from the record. *Id.* On May 2, 2017, this Court issued an order directing the Commissioner to supplement or complete the record or show cause why the case should not be remanded for failure to file the complete record. Dkt. 18. On May 18, 2017, the Commissioner supplemented the record by filing the complete hearing transcript. Dkt. 19. Accordingly, the Court considers this branch of Ms. Goodman's motion to be moot.

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

[4] It appears that the vocational expert (VE) testified that Ms. Goodman could, in fact, perform her past relevant work as a scrap sorter. Tr. 93. This issue is not relevant to the Court's determination of Ms.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Goodman can perform, she is not disabled.

Tr. 47-59. The Appeals Council denied Ms. Goodman's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-6.[5]

# DISCUSSION

## A. Department of Veterans' Affairs (VA) Disability Determination

Ms. Goodman contends that substantial evidence does not support the ALJ's evaluation of the VA's disability determination. Dkt. 9 at 3. The Court agrees.

The record contains a letter from the VA dated October 3, 2013, indicating that it had reached a "provisional decision" on Ms. Goodman's application for benefits. Tr. 291-97. Specifically, the letter indicated that the VA had provisionally determined that Ms. Goodman was 70% disabled due to "PTSD, major depression, and alcohol dependence in remission." *Id.* The letter further indicated that Ms. Goodman was "denied entitlement to the 100% rate because it wasn't shown that [she was] unable to work as a result of [her] service connected disability/disabilities." Tr. 262. The letter indicated that a copy of the "Rating Decision" was also enclosed which "provides a detailed explanation of our decision, the evidence considered, and the reasons for our decision." Tr. 294. However, the Rating Decision referenced in the letter is not included in the record nor does the letter itself explain the basis for the VA's provisional decision. The ALJ gave "some weight" to the VA's provisional decision finding it "consistent with the record as a whole supporting the claimant was able to work with the limitations set forth in the above residual functional capacity." Tr. 57. The ALJ also discounted

Goodman's claim here. However, if necessary upon reevaluating the evidence on remand, the ALJ should also address this discrepancy.

[5] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

the VA's provisional decision in part because "the Social Security Administration has different rules governing the definition and assessment of disability." *Id.*

Subsequent to the ALJ's decision, in March 2015, the VA issued a "final decision" based on the submission of additional evidence. Tr. 7-16. The final decision reaffirmed the finding that Ms. Goodman was 70% disabled but found that she was entitled to "individual unemployability" effective February 1, 2012, because the evidence showed she was "unable to secure or follow a substantially gainful occupation as a result of service-connected posttraumatic stress disorder with major depression and alcohol dependence in remission." *Id.* The March 2015 VA determination further indicates that the 70% disability evaluation is based on: "occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood"; "difficulty in adapting to a worklike setting"; "difficulty in adapting to stressful circumstances"; "difficulty in adapting to work"; "inability to establish and maintain effective relationships"; "difficulty in establishing and maintaining effective work and social relationships"; "disturbances of motivation and mood"; "flattened affect"; "anxiety"; "chronic sleep impairment"; and "depressed mood." Tr. 15-16.

A VA determination of disability is "ordinarily" entitled to "great weight." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, an ALJ may "give less weight to VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694–95 (9th Cir. 2009) (quoting *McCartey*, 298 F.3d at 1076) (internal quotation marks omitted). Here, substantial evidence does not support the ALJ's finding that the VA's 70% disability rating is "consistent with" the RFC assessment. Tr. 57. In the first instance, the letter discussing the provisional decision of 70% disability does not include an explanation of the basis for that finding or the

areas in which Ms. Goodman was limited.  Tr. 291-97.  As such, the ALJ's conclusion that the

70% disability rating is consistent with his RFC is purely speculative and is not supported by

substantial evidence.  Moreover, the letter describing the provisional decision references a

"Rating Decision" that provides a "detailed explanation of our decision, the evidence considered,

and the reasons for her decision."  Tr. 294.  However, here, there is no indication the ALJ

attempted to obtain the Rating Decision explicitly referenced in the VA's letter.  The ALJ has

"an independent duty to fully and fairly develop the record and to assure that the claimant's

interests are considered."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal

citations and quotation marks excluded).  This duty is triggered by "[a]mbiguous evidence, or the

ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence[.]"

*Id.*  Under the circumstances, the VA's provisional determination of 70% disability was

ambiguous and the record inadequate for the ALJ to conclude that this rating was consistent with

the limitations contained in his RFC determination.  Accordingly, absent further development of

the record, substantial evidence did not support the ALJ's finding.

Moreover, the VA's 2015 final determination further undermines the ALJ's evaluation of

the VA's disability determination.  Tr. 7-16.  The 2015 final determination was new evidence

which was submitted to the Appeals Council after the ALJ's decision.  Tr. 1-4.  The Appeals

Council examined the evidence and determined that it did not affect the decision about whether

Ms. Goodman was disabled.  *Id.*  Thus, the 2015 VA final determination "became part of the

administrative record, which the district court must consider when reviewing the

Commissioner's final decision for substantial evidence."  *Brewes v.Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1163 (9th Cir. 2012).  The 2015 final determination undermines the ALJ's

finding that the 70% disability determination was "consistent with the RFC" in two ways.  Tr.

57. First, the final decision does include a Rating Decision which indicates that the 70% rating is based in part on Ms. Goodman's "difficulty in adapting to stressful circumstances." Tr. 13-16. The RFC does not include any limitation directly addressing Ms. Goodman's ability to deal with stress. Second, the final decision determined that, while Ms. Goodman maintained a 70% disability rating, she was also unemployable *beginning February 1, 2012*, due to her impairments. Tr. 7-16. The Commissioner argues that the VA's 2015 final determination does not undermine the ALJ's findings because it is based on a new diagnosis rendered after the ALJ's decision. Dkt. 16 at 17-18. However, the 2015 final determination indicates that while the VA considered a record from 2015 indicating a new diagnosis of bipolar disorder, it also considered records from 2013, prior to the ALJ's decision. Tr. 15. Moreover, based on those records the VA determined that,

> A review of your VA Medical Center treatment records show you continue to be treated for posttraumatic stress disorder and major depressive disorder. *Symptoms shown in your treatment records and current examination are consistent with exam findings of 2013.* Although recent VA examination findings show a separate and distinct new mental illness and abatement of PTSD symptoms, the weight of the medical evidence, specifically VA Medical Center treatment records, shows ongoing care for PTSD with your mood lability more consistent with personality traits rather than a diagnosis of bipolar disorder. Consequently, the evidence being in equipoise, we are assigning more weight to favorable findings showing *continuity of your condition.*

*Id.* (emphasis added). Thus, contrary to the Commissioner's argument, the VA concluded that the evidence showed continuity of Ms. Goodman's condition, namely PTSD and major depressive disorder, and that the evidence established individual unemployability commencing February 1, 2012, prior to Ms. Goodman's application for DIB. *Id.* Under these circumstances, the final determination by the VA serves to further undermine the ALJ's finding that the VA's 70% disability rating was consistent with the RFC. Tr. 57.

Finally, the ALJ also discounts the VA's disability rating because "the Social Security Administration has different rules governing the definition and assessment of disability." Tr. 57. However, this generalized rationale is not a "persuasive, specific, valid reason[ ]" for discounting the VA determination. *See Valentine*, 574 F.3d at 695 (ALJ's rejection of the VA's disability rating "on the general ground that VA and SSA disability inquiries are different" was not a persuasive, specific, valid reason); *and see McCartey*, 298 F.3d at 1076 (noting the "marked similarity between [the disability programs of the VA and of the SSA].").

In sum, substantial evidence does not support the ALJ's finding with respect to the VA's disability determination. On remand, the ALJ should reevaluate the VA's disability rating taking into account the 2015 final decision.

**B. Medical Opinion Evidence**

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* at 830-31. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

**1. Physical Impairments**

### a. Step Two and Consideration of "Non-Severe" Impairments

Ms. Goodman argues, albeit in a somewhat convoluted manner, that the ALJ erred in finding her physical impairments non-severe at step two. Dkt. 9 at 5-6; Dkt. 17 at 8. Ms. Goodman goes on to argue that the ALJ harmfully erred in failing to include in his RFC assessment "all of the limitations caused by all of Goodman's impairments, including those which the ALJ found were non-severe." Dkt. 9 at 5-6.

At step two of the sequential evaluation, the Commissioner must determine "whether the claimant has a medically severe impairment or combination of impairments." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden to show that (1) she has a medically determinable physical or mental impairment, and (2) the medically determinable impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). Thus, a medically determinable impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. "'Regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings[.]'" *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p).

In addition to producing evidence of a medically determinable physical or mental impairment, the claimant bears the burden at step two of establishing that the impairment or impairments is "severe." *See Bowen*, 482 U.S. at 146. An impairment or combination of

impairments is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c). "The step two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). However, the claimant has the burden of proving her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). Moreover, the Commissioner's regulations require an ALJ to consider all of a claimant's medically determinable impairments—both severe and non-severe—in fashioning an RFC. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2); *see also* Social Security Ruling (SSR) 96–8p, 1996 WL 374184 at *4 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The ALJ found:

> [D]egenerative disc disease of the cervical spine, degenerative joint disease of the shoulders, gastroesophageal reflux disease, and migraines are not "severe" impairments. [Ms. Goodman] repeatedly denied pain or tenderness of the neck, back or joints, or musculoskeletal symptoms. Treatment providers generally had unremarkable physical examinations of the claimant. She reported medications markedly improved and completely resolved her headaches. Diagnostic imaging of the neck showed mild to moderate degenerative disease. Diagnostic imaging of the right shoulder showed mild osteoarthritis. Diagnostic imaging of the left shoulder showed mild to moderate degenerative changes. Electrodiagnostic study of the extremities showed no evidence of cervical radiculopathy or peripheral neuropathy of the upper or lower limbs. The record fails to establish that the impairments have a more than minimal effect on the claimant's ability to perform basic work activities and are, therefore, not "severe" under the regulations.

Tr. 49-50.

The Court agrees the ALJ erred in evaluating Ms. Goodman's cervical degenerative disc

disease at step two. The ALJ appears to accept cervical degenerative disc disease as a medically determinable impairment, noting that diagnostic imaging of the neck showed mild to moderate degenerative disease. Tr. 49. However, the ALJ finds this impairment non-severe because the record does not establish the impairment has "more than a minimal effect on [Ms. Goodman's] ability to perform basic work activities." Tr. 50. The ALJ indicates that treatment providers "generally had unremarkable physical examinations" and Ms. Goodman "repeatedly denied pain or tenderness of the neck, back or joints or musculoskeletal symptoms." *Id.* However, a review of the record reflects several instances in which Ms. Goodman was evaluated for neck pain and on examination she was noted to be tender to palpation, have a moderately limited range of motion, or to have chronic neck spasm of paraspinal and trapezius muscles, for which she was prescribed and received acupuncture treatment and cervical traction. Tr. 406 (tenderness to palpation), 604 (history of acute neck and low back pain limits neck and trunk active range of motion), 699 (neck ROM moderately limited in all directions), 904 ("chronic neck spasm, involvement of paraspinal musculature and trapezius with periscapular spasming"), 940 (use of cervical traction). Thus, substantial evidence does not support the ALJ's rationale for finding Ms. Goodman's cervical spine degenerative disc disease to be a non-severe impairment.

Moreover, the Court cannot conclude that this error was harmless as the ALJ did not discuss Ms. Goodman's cervical spine impairment and the related symptoms, opinions and medical findings in evaluating the RFC at subsequent steps of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (Any error in failing to list bursitis as a severe impairment at step two was harmless where the ALJ extensively discussed bursitis and considered any limitations posed by bursitis at Step 4 of the analysis). In fact, in evaluating the medical evidence and determining the RFC, the ALJ gives significant weight to Dr. Hale's opinion that

Ms. Goodman had no severe physical impairments. Tr. 56. However, Dr. Hale's opinion does not indicate that he considered evidence related to Ms. Goodman's cervical spine impairment at all in determining Ms. Goodman had no severe physical impairments. Tr. 115-116. Rather, as Ms. Goodman points out, the cervical MRI revealing mild to moderate cervical degenerative disc disease post-dates Dr. Hale's opinion as do the records of Ms. Goodman's acupuncture treatment for chronic neck spasms. Tr. 604-607, 900-906. Accordingly, the Court cannot conclude the ALJ's error in evaluating Ms. Goodman's cervical spine impairment at step two was harmless and the ALJ should reevaluate that impairment at step two and at subsequent steps on remand.

The ALJ also erred in failing to evaluate Ms. Goodman's low back impairment at step two. In October 2013, an MRI revealed degenerative disc disease, albeit minimal, of the lumbar spine. Tr. 604-607. Ms. Goodman's husband, Michael Goodman, also submitted a lay statement indicating that Ms. Goodman is unable to lift more than five pounds due to her low back pain. Tr. 264. As discussed in more detail below, the ALJ failed to properly reject or account for Mr. Goodman's statement regarding Ms. Goodman's lifting restriction in the RFC or in the hypothetical to the VE. Accordingly, the Court cannot determine that the ALJ's failure to evaluate Mr. Goodman's low back impairment at step two was harmless as there is evidence that the impairment imposed a significant limitation which must be reevaluated on remand. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' [… and] 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" (quoting *Stout*, 454 F.3d at 1055-56)).

With respect to Ms. Goodman's shoulder impairments and headaches, substantial

evidence supports the ALJ's determination that these impairments were non-severe. The ALJ

appears to accept that these are medically determinable impairments. Tr. 49. The ALJ notes

that imaging of Ms. Goodman's right shoulder showed mild osteoarthritis and of her left

shoulder showed mild to moderate degenerative changes. *Id.* However, the ALJ notes that

treatment providers generally had unremarkable physical examinations and that Ms. Goodman

acknowledged that medications markedly improved and completely resolved her headaches. *Id.*

Substantial evidence supports the ALJ's findings with respect to these impairments. For

instance, on examination of her upper extremities Ms. Goodman was found to have full strength

and negative impingement. Tr. 406, 749. Moreover, Ms. Goodman testified at the hearing that

her medication relieved her migraines and allowed her to get back to her activities. Tr. 78. Ms.

Goodman points to no evidence indicating that these impairments or their symptoms were more

than a slight abnormality that had more than a minimal effect on her ability to perform basic

work activities. Under the circumstances, the ALJ reasonably determined that Ms. Goodman's

headache and shoulder impairments were non-severe. However, the ALJ fail to discuss or

consider Ms. Goodman's headache and shoulder impairments at all in determining her RFC as

required by the regulations. *See* 20 C.F.R. 404.1545(a)(2). Accordingly, on remand the ALJ

should also consider and discuss those non-severe impairments in evaluating Ms. Goodman's

RFC.

### b.     B. Rishi Parmar, M.D.

Ms. Goodman contends the ALJ harmfully erred in evaluating the opinion of Dr. Parmar.

Dkt. 9 at 5. The Court disagrees.

Dr. Parmar examined Ms. Goodman in April 2012 related to her complaints of low back

pain. Tr. 372. Dr. Parmar indicated that Ms. Goodman "reports that her chronic back pain is

exacerbated by lifting heavy objects at work[].  Her history and physical exam is consistent with our prior records.  We recommend that patient lift no more than 5 lbs at work (or home)."  *Id.* The ALJ reasonably rejected Dr. Parmar's opinion as inconsistent with his clinical findings that Ms. Johnson had no pain on palpation of the lower spine or paraspinous muscles.  Tr. 55.  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citation omitted).  Moreover, "[a]n ALJ may reject an examining physician's opinion if it is contradicted by clinical evidence."  *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008).  Furthermore, an ALJ does not err in failing to include a doctor's recommendations, as opposed to functional limitations, in an RFC assessment. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009) (ALJ did not err by failing to incorporate into RFC doctor's statement that appeared in section of report entitled "Recommendations" and was neither a diagnosis nor statement of claimant's functional capacity); *and see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (ALJ did not err in failing to incorporate a doctor's statement into RFC where the doctor's "proposal was offered as a *recommendation,* not an imperative" (emphasis in original).

Ms. Goodman argues that Dr. Parmar's opinion is based in part on her "prior records." Dkt. 9 at 5-6.  However, Dr. Parmar does not state that his assessment is based upon Ms. Goodman's prior records but indicates only that her "history and physical exam is consistent with our prior records."  Tr. 372.  However, as Ms. Goodman's physical exam reflects no objective findings, Dr. Parmar's statement that the exam is consistent with his prior records undermines Ms. Goodman's argument that those prior records provide independent support for the recommendation against lifting.  Accordingly, the ALJ properly discounted Dr. Parmar's

statement as inconsistent with his clinical findings and, even if he had not, the statement is presented in the form of a recommendation (rather than a functional limitation) which the ALJ was not required to adopt in the RFC. *See Valentine*, 574 F.3d at 691–92.

Accordingly, the ALJ did not err in evaluating Dr. Parmar's April 2012 statement.

### c. Gordon Hale, M.D.

Ms. Goodman contends the ALJ erred in evaluating the opinion of Dr. Hale. Dkt. 9 at 7. In March 2013, Dr. Hale reviewed Ms. Goodman's records including her medical history of restless leg syndrome, a-fib, shoulder anthralgia (including a shoulder x-ray showing mild osteoarthritis), chronic low back pain, gastroesophageal reflux disease, and migraines. Tr. 116. Dr. Hale found that Ms. Goodman did not have a "severe" physical impairment. *Id.* Dr. Hale noted there was no evidence of any treatment for these conditions beyond medication management and that in Ms. Goodman's description of her activities of daily living, she does not indicate she has any limitations to, nor does she make reference to physical conditions. Tr. 115. The ALJ indicates that he is giving Dr. Hale's opinion significant weight because he "had the benefit of reviewing the medical evidence and it is consistent with treatment providers['] unremarkable physical examinations of the claimant." Tr. 56.

Ms. Goodman contends the ALJ erred in giving Dr. Hale's opinion significant weight because he did not review any records after March 2013. Dkt. 9 at 7. This fact, in and of itself, is not a sufficient reason to discount Dr. Hale's opinion entirely. However, here, Dr. Hale's opinion does not indicate that he reviewed or considered any evidence with respect to Ms. Goodman's cervical spine impairment. Tr. 115-116. Moreover, x-ray and MRI reports of Ms. Goodman's cervical and lumbar spine post-dating Dr. Hale's opinion show C4-5 and C5-6 spondylosis and mild to moderate degenerative disease of the cervical spine, most notable at C4-

5, as well as degenerative disc disease, albeit minimal, of the lumbar spine.  Tr. 604-606.  As noted above, the ALJ erred in evaluating Ms. Goodman's cervical and lumbar spine impairments at step two and in failing to consider her other non-severe impairments in evaluating the RFC. Thus, in reevaluating Ms. Goodman's physical impairments at step two, and at subsequent steps, the ALJ should also reevaluate Dr. Hale's opinion.

### 2.    Mental Health Impairments

#### a.    Miles K. Hohenegger, Ph.D.

Ms. Goodman contends the ALJ harmfully erred in evaluating the opinion of Dr. Hohenegger.  Dkt. 9 at 6-7.  The Court agrees.

In July 2013, Dr. Hohenegger performed a psychiatric examination of Ms. Goodman and diagnosed post-traumatic stress disorder and major depression.  Tr. 720-734.  He assessed a Global Assessment of Functioning (GAF) score of 45.  Tr. 733.  Dr. Hohenegger found Ms. Goodman had "occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood."  Tr. 723.  Dr. Hohenegger opined that "[t]he overall impact of the Veteran's psychological stress does at the present time cause deficiencies in most areas; social, occupational, family capabilities[,] secondary to primary symptoms of PTSD and major depression[] [w]ith primary difficulties in conflict resolution, primary difficulties in establishing new relations."  Tr. 732.  Dr. Hohenegger opined that Ms. Goodman "is not capable of engaging in sustained employment secondary to primary difficulties in establishing and maintaining effective relationships."  Tr. 733.

The ALJ discounted Dr. Hohenegger's opinion as based "heavily" on Ms. Goodman's self-reports, which the ALJ discounted as not fully credible.  Tr. 56.  "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence,

and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal citations and quotation marks omitted). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.* Moreover, "[a]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan*, 528 F.3d at 1199-1200.

Here, although Dr. Hohenegger considered Ms. Goodman's symptom reports in his evaluation he did not discredit those complaints himself and substantial evidence does not support the ALJ's finding that the doctor relied more heavily on Ms. Goodman's self-reports than on his clinical observations in reaching his opinions. Rather, Dr. Hohenegger's opinion appears to be supported by the results of the mental status examination, including the results of the depression survey (PHQ-9), the post-traumatic stress disorder scale interview (PSS-I), as well as his personal clinical observations. Tr. 730. Specifically, Dr. Hohenegger observed Ms. Goodman's affect to be mildly restricted and her mood mildly depressed. Tr. 730. He further noted that Ms. Goodman score on the PHQ-9 indicated moderate to moderate severe symptoms of depression. *Id.* Dr. Hohenegger noted that Ms. Goodman's score on the PSS-I met criteria for experiencing past sexual traumas, past military sexual trauma and increased arousal associated with past trauma. *Id.* Dr. Hohenegger also indicated that Ms. Goodman's performance on the PSS-I was considered valid and indicated moderately severe to severe symptoms of post-traumatic stress disorder. *Id.* In light of the objective findings supporting Dr. Hohenegger's opinion, substantial evidence does not support the conclusion that he relied more heavily on Ms.

Goodman's self-reports than on his own clinical findings.

The ALJ also rejected Dr. Hohenegger's opinion as inconsistent with the clinical findings of treatment providers.  Tr. 56.  Specifically, the ALJ noted that Dr. Fukuda "consistently found [Ms. Goodman] was cooperative and pleasant with good eye contact and had a bright, euthymic and good range affect."  *Id.*  An ALJ may discount a physician's opinion as inconsistent with clinical findings.  *Valentine*, 574 F.3d at 692–93 (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion).  However, in evaluating mental health issues "[c]ycles of improvement and debilitating symptoms are a common occurrence" and, in such circumstances, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Garrison*, 759 F.3d at 1017; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws.").  The majority of Dr. Fukuda's treatment notes cited by the ALJ are from a period subsequent to Dr. Hohenegger's evaluation and, while Dr. Fukuda's clinical observations may indicate a period of improvement in late 2013, they do not represent the treatment record as a whole.

Dr. Hohenegger based his opinion on his own ninety minute psychiatric examination as well as a review of Ms. Goodman's VA computer medical records, including the discharge summary from Ms. Goodman's psychiatric hospitalization.  Tr. 720-734.  The VA records from the period prior to Dr. Hohenegger's evaluation reveal that Ms. Goodman was admitted to the psychiatric unit for six days in October 2012 due to depression and suicidal ideation.  Tr. 588.  During her hospitalization Ms. Goodman was observed to have periods of smiling and tearfulness and her GAF was rated at 35.  Tr. 554, 558, 594, 596.  She was observed to show

pressured speech, an affect that was incongruent at times smiling and laughing while describing

past experiences of violence and trauma, circumstantial to tangential though process and

association, frequently beginning to answer a question and then getting off topic.  Tr. 566, 576.

In the months leading up to and following her discharge from the hospital Ms. Goodman was

observed by various providers to show dysphoric, irritable, or anxious mood, to have difficulty

concentrating, to be sad and tearful, to have tangential thought processes and circumferential

thinking, to exhibit flat affect or to be withdrawn.  Tr. 328, 510, 515, 517, 518, 528, 536-537,

576, 850, 854, 862.  There is also evidence that Ms. Goodman engaged in self-harming behavior,

namely cutting, scraping or hitting herself.  Tr. 691, 428, 433.  Viewing the treatment record as a

whole, the ALJ's reference to Dr. Fukuda's treatment notes without more is not a sufficient

reason to discount Dr. Hohenegger's evaluation.

Accordingly, the ALJ erred in evaluating Dr. Hohenegger's opinion.  This error was not

harmless as the ALJ failed to either properly reject or include Dr. Hohenegger's limitations in the

RFC or in the hypothetical to the VE.  The error was therefore potentially consequential to the

ALJ's step five determination.  *See Marsh*, 792 F.3d at 1173.  On remand, the ALJ should

reevaluate Dr. Hohenegger's opinion.

**b.      Katrina L. Higgins, Psy.D.**

Ms. Goodman contends the ALJ harmfully erred in evaluating the opinion of Dr. Higgins.

Dkt. 9 at 6-7.  The Court agrees.

The ALJ gave "significant weight" to Dr. Higgins' opinion "because the doctor

thoroughly examined the claimant and it is generally consistent with the doctor's clinical

findings." Tr. 55.  Ms. Goodman argues that although the ALJ purported to give Dr. Higgins'

opinions significant weight, the ALJ erred in ignoring important limitations.  Dkt. 9 at 6-7.  The

1    Commissioner argues the ALJ did not err because he "included significant mental limitations in

2    the RFC assessment that adequately account for *most of* Dr. Higgins's findings[.]" Dkt. 16 at 5-6

3    (emphasis added). The Court agrees with Ms. Goodman. Contrary to the Commissioner's

4    argument it is not sufficient that an ALJ's RFC account for "most of" a doctor's opined

5    limitations while ignoring other limitations without comment. Here, the ALJ erred in failing to

6    address Dr. Higgins' opinions that Ms. Goodman "might need a little extra supervision and

7    encouragement to stay on task", and that she "will not handle conflict or high stress situations

8    well." Tr. 492. This error was not harmless as the ALJ failed to either properly reject or include

9    these limitations in the RFC or in the hypothetical to the VE. The error was therefore potentially

10   consequential to the ALJ's step five determination. *See Marsh*, 792 F.3d at 1173. On remand,

11   the ALJ should evaluate these portions of Dr. Higgins' opinion.

12       Ms. Goodman also argues the ALJ erred in failing to address Dr. Higgins' opinion that

13   she would require six to twelve months of therapy prior to returning to work. Dkt. 9 at 6.

14   However, Ms. Goodman misstates Dr. Higgins' opinion. Dr. Higgins' opinion actually states

15   that "it is likely [Ms. Goodman] will need to be in therapy for 6-12 months minimum. However,

16   during that time she could simultaneously mo[ve] toward returning to work." Tr. 492. This

17   branch of Dr. Higgins' opinion does not assign any specific limitation in relation to Ms.

18   Goodman's ability to work and, as such, the ALJ did not err in failing to provide clear and

19   convincing or specific and legitimate reasons for rejecting the opinion. *See Turner v. Comm'r of*

20   *Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (explaining that where a doctor's

21   opinion does not assign any specific limitations, an ALJ need not provide reasons for rejecting

22   the opinion because none of the conclusions were actually rejected).

23       **3.    Gary L. Nelson, Ph.D. and Kent Reade, Ph.D.**

Ms. Goodman argues the ALJ erred in giving great weight to the nonexamining State Agency consulting opinions of Dr. Nelson and Dr. Reade. Dkt. 9 at 7.

Dr. Nelson reviewed Ms. Goodman's records in September 2012. Tr. 99-108. Dr. Nelson opined that Ms. Goodman would be moderately limited in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 105. Dr. Nelson further opined that Ms. Goodman would be moderately limited in her ability to interact appropriately with the general public and to respond appropriately to changes in the work setting. Tr. 106. Dr. Nelson found that Ms. Goodman requires a setting with little or no public contact and where contact with co-workers is superficial and infrequent. *Id.* Dr. Nelson indicated that routine tasks would minimize the need for supervisor contact and that Ms. Goodman would require a predictable work setting. *Id.* Dr. Reade reviewed Ms. Goodman's records in February 2013 and reaffirmed Dr. Nelson's opinion. Tr. 118-120.

Ms. Goodman contends that "because Dr. Nelson did not review any evidence beyond February 2013, his opinion is entitled to limited weight." Dkt. 9 at 7. This fact, in and of itself, is not a sufficient reason to discount Dr. Nelson's and Dr. Reade's opinions per se. However, Dr. Nelson's and Dr. Reade's opinions are based in part on a review of Dr. Higgins' opinion which must be reevaluated on remand. The opinions also pre-dated Dr. Hohenegger's opinion which must also be reevaluated on remand. Accordingly, in reevaluating Dr. Higgins' and Dr. Hohenegger's opinions on remand, to the extent necessary, the ALJ should also reevaluate and

1    reweigh Dr. Nelson's and Dr. Reade's opinions.

2            **4.    Other Medical Evidence**

3            Ms. Goodman also summarizes some other medical evidence in the record which she

4    contends is consistent with Dr. Hohenegger's opinion and the VA determination that she is

5    unemployable. Dkt. 9 at 7-9. Ms. Goodman's own summary of evidence, without more, does

6    not establish a separate, independent harmful error with respect to the ALJ's evaluation of the

7    medical evidence. *Molina v. Astrue*, 674 F.3d 1104, (9th Cir. 2012) (the person seeking review

8    of the ALJ's determination has the burden of showing that the ALJ committed harmful error.).

9    However, the Court has already determined that the ALJ erred in evaluating Dr. Hohenegger's

10   opinion as well as the VA disability determination and that that evidence must be reevaluated on

11   remand.

12   **C.    Ms. Goodman's Symptom Testimony**

13           Ms. Goodman contends the ALJ erred in evaluating her symptom testimony. Dkt. The

14   Court agrees.

15           Ms. Goodman testified that she was unable to work because she does not get along with

16   supervisors and people "hounding" her. Tr. 75. She testified that she "stresses out" easily and

17   breaks down. *Id.* She testified she experienced symptoms of PTSD such as flashbacks,

18   nightmares, and difficulty sleeping. Tr. 88. She testified she could pay attention for twenty to

19   thirty minutes and that she had difficulty completing tasks. Tr. 88.

20           The ALJ discounted Ms. Goodman's testimony as inconsistent with the medical

21   evidence. Tr. 54. Specifically, the ALJ noted that Dr. Fukuda consistently found her

22   cooperative and pleasant with good eye contact and a bright, euthymic and good range affect,

23   linear and logical thought process. *Id.* Dr. Ausburger found Ms. Goodman had a euthymic and

full range affect and had linear and organized thought process and grossly intact cognition. *Id.* The ALJ also notes that Dr. Higgins found Ms. Goodman cooperative with appropriate eye contact and had a euthymic mood and appropriate affect, was able to respond readily to questions and remain focused on conversation. *Id.* The ALJ also notes that Dr. Higgins' mental status examination indicated that Ms. Goodman was able to recall three of three items after five minutes, complete serial sevens with no error, repeat five digits forward and three digits backward, spell "world" forward and backward, and recite the months of the year backward at a steady pace without error. *Id.*

First, the ALJ fails to explain, nor is it clear from the record, why these observations of Ms. Goodman's mood and affect during some visits to healthcare providers for treatment necessarily undermine her allegations that she has difficulty getting along with her supervisors and handling stress in a work environment. *See, e.g., Carl v. Colvin*, No. 14-5769, 2015 WL 1736411 (W.D. Wash. April 16, 2015) (finding the fact that a provider found a claimant presented as cooperative, rather than rude and uncooperative, during an examination "is not substantial evidence of an inconsistency with his assessment of marked limitations in social functioning during regular employment"). Second, once again, the ALJ cites selectively to portions of the record which appear to indicate an absence of symptoms but does not evaluate Ms. Goodman's testimony in the context of the record as a whole. The Ninth Circuit has "emphasized repeatedly that it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1018 ("Rather than describe Garrison's symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit Garrison.").

"Consistency does not require similarity of findings over time despite a claimant's evolving mental status." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007). Here the ALJ ignores the evidence indicating that Ms. Goodman was admitted to the psychiatric unit for six days in October 2012 due to depression and suicidal ideation and with a GAF rating of 35. Tr. 554, 558, 594, 596. The ALJ also does not discuss that in the months leading up to and following her discharge from the hospital Ms. Goodman was observed by various providers to show dysphoric, irritable, or anxious mood, to have difficulty concentrating, to be sad and tearful, to exhibit flat affect or to be withdrawn and that she engaged in self-harming behavior. Tr. 328, 510, 515, 517, 518, 528, 536-537, 576, 691, 850, 854, 862, 428, 433. Moreover, while the record shows there are periods during which Ms. Goodman denied nightmares, flashbacks and difficulty sleeping, there were also periods during which she endorsed such symptoms or, alternatively, endorsed symptoms of hypersomnolance. Tr. 388, 435, 454, 518, 541, 548, 552, 562, 726-727, 821, 830, 931. That Ms. Goodman's symptoms may have waxed and waned with treatment is not a sufficient reason to discount her testimony as a whole. In sum, the ALJ's citation to certain providers' opinions without discussion or consideration of the record as a whole was not a sufficient basis to discount Ms. Goodman's testimony.

The ALJ also notes that Dr. Higgins indicated that while Ms. Goodman reported being diagnosed with PTSD she did not seem to have a clear understanding of what trauma this diagnosis was related to. Tr. 54. Specifically, Dr. Higgins noted that Ms. Goodman indicated she was diagnosed with PTSD in 1987 but did not report trauma until 1988. Tr. 54, 488-493. The ALJ also notes that Dr. Higgins found Ms. Goodman did not meet the criteria for a diagnosis of PTSD finding her symptoms at the time more consistent with major depressive disorder. *Id.* However, several other doctors in the record diagnosed Ms. Goodman with PTSD and the ALJ

accepted those diagnoses and considered Ms. Goodman's PTSD to be a severe impairment. Tr.

49. Moreover, Dr. Higgins does not indicate that she believes Ms. Goodman is malingering or

exaggerating symptoms and explains that Ms. Goodman may have met the criteria of PTSD in

the past or that she may not have adequately portray her anxiety symptoms during the exam. Tr.

492. Thus, under the circumstances, Dr. Higgins' statements, without more, do not substantially

undermine Ms. Goodman's symptom testimony.

The ALJ also discounts Ms. Goodman's symptom testimony as inconsistent with her

daily activities. Tr. 55. Inconsistency between a claimant's testimony and her daily activities

may constitute a valid reason to discount that testimony. *See Molina*, 674 F.3d 1104. Here the

ALJ specifically notes that Ms. Goodman prepared meals, performed household chores such as

cleaning the bathroom, vacuuming, sweeping and mopping, went outside alone, used public

transportation, drove without difficulty, shopped in stores, had hobbies of making bracelets and

earrings, played computer games, spent time with her sister once a month and her mother twice a

month, regularly went to bead stores and church, attended bible study on Wednesday night, and

went to Work Source to look for a job. Tr. 55. However, it is unclear how these rather basic,

low-stress activities, which Ms. Goodman has the flexibility to perform on her own schedule,

necessarily undermine her testimony. *See Smolen*, 80 F.3d at 1284 n. 7 (a claimant need not be

completely incapacitated to receive benefits and "many home activities may not be easily

transferable to a work setting"); *Bjornson v. Astrue*, 671 F.3d 640, 647 ("The critical differences

between activities of daily living and activities in a full-time job are that a person has more

flexibility in scheduling the former than the latter, can get help from other persons …, and is not

held to a minimum standard of performance, as she would be by an employer."). Nor does the

ALJ explain his finding of inconsistency or find that these activities are transferable to the work-

setting. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reasons are insufficient).

Moreover, while Ms. Goodman acknowledges that she is capable of performing the activities cited by the ALJ, she also indicates that these activities are restricted by her symptoms. For instance, she indicates that she prepares frozen foods, sandwiches or simple easy instant meals once or twice a week but that her husband does the rest of the cooking. Tr. 273. Ms. Goodman indicates that she vacuums, sweeps, mops and cleans the bathroom but that it takes her a long time and that she needs encouragement from her husband to finish these tasks. *Id.* Ms. Goodman also indicates that she goes outside very little except when she goes to VA appointments. *Id.* Under the circumstances, substantial evidence also does not support the ALJ's finding that Ms. Goodman's testimony is inconsistent with her ability to engage in the rather basic activities identified by the ALJ.

The ALJ also discounts Ms. Goodman's testimony in part on the grounds that she worked after the alleged onset date and stopped working for reasons unrelated to her impairments. Tr. 55. The ALJ concludes that this demonstrates Ms. Goodman is able to maintain employment despite her impairments. *Id.* The record does not support this finding. Ms. Goodman testified that while she did work as a sign holder for several months after her alleged onset date, she was fired from that job because her employer was dissatisfied with her job performance indicating that she was never at her post. Tr. 74. She further indicated that she always had problems with her supervisors on the job. *Id.* This testimony tends to indicate that Ms. Goodman may, in fact, have been fired due to her difficulty getting along with her supervisors and persisting to complete tasks. This testimony is also consistent with Ms. Goodman's function report in which she indicates that she gets laid off from almost every job. Tr. 271. Moreover, around the same

time Ms. Goodman lost her job she was admitted to a psychiatric hospital due to depression and suicidal ideation. Tr. 588. Thus, under the circumstances, substantial evidence does not support this reason for discounting Ms. Goodman's symptom testimony.

Accordingly, the ALJ erred in evaluating Ms. Goodman's symptom testimony. This error was not harmless as the ALJ did not properly reject or account for all of Ms. Goodman's stated limitations in the RFC or in the hypothetical to the VE. *See Marsh*, 792 F.3d at 1173.

**D.     Lay Witness Evidence**

Ms. Goodman contends the ALJ erred in evaluating the lay witness statements of her husband Michael Goodman. Dkt. 9 at 15-17. The Court agrees.

In an undated statement, Mr. Goodman indicated that he does 95% of the cooking, washes the dishes, does the laundry and does most of the house cleaning. Tr. 226. He indicated that Ms. Goodman: sleeps a lot due to depression and doesn't want to do anything; has to be forced to get out of bed to start the day; doesn't want to get up and go to work without being forced; complains often of suffering from headaches; sleeps about 15 hours a day or more; sometimes works for five or six hours and goes back to sleep when she comes home; used to be able to keep a job involving forty or more hours a week but now she only wanted to sleep; is unable to sleep due to dreams of her past; sometimes goes a week without bathing; doesn't wash her hair or shave her legs for days; either overeats or doesn't eat at all; needs to be reminded to shower or bathe and needs repeated reminders to take her medicine; cooks only frozen dinners; is afraid to pay bills for fear of making a mistake and is afraid to handle money; sleeps a lot more than when he met her three years before and doesn't want to do much; wants to keep to herself; is impaired in lifting due to a bad lower back and in standing, squatting, and bending, due to being overweight; talks loudly because she has difficulty hearing; has nightmares. Tr. 259-266.

1    In November 2012, Mr. Goodman also submitted a statement indicating that he had to

2    take care of Ms. Goodman most of the time and that he does most of the cooking.  Tr. 224-231.

3    He indicated Ms. Goodman had been able to work but was laid off and had become more and

4    more depressed and now only wanted to sleep.  *Id.*  He indicated Ms. Goodman could sweep and

5    mop the floor, clean the bathroom and vacuum but that it takes her all day because she sits down

6    to rest.  *Id.*  He indicated Ms. Goodman had been driving until she rear ended another car due to

7    being "spaced out" and ran a red light.  *Id.*  Due to these incidents, he indicated Ms. Goodman no

8    longer drives.  *Id.*  He further indicated Ms. Goodman: might shower every three days; had to be

9    reminded to shower; had to be woken up and reminded to take her medicine; is always

10   complaining she is tired or has a headache; is unable to pay bills or handle checking or savings

11   accounts because it causes her too much stress; used to go out a lot more before her condition

12   began; can only lift five pounds; has difficulty with memory forgetting the subject during

13   conversation; has difficulty completing tasks; can walk fifteen minutes and then has to rest for

14   twenty minutes; gets distracted easily; has problems getting along with authority figures; has

15   been laid off or fired because of arguments with her bosses; does not handle stress well; does not

16   handle changes to routine well; gets stressed out a lot and depressed when things don't go her

17   way.  *Id.*

18          In determining whether a claimant is disabled, an ALJ must consider lay witness (or

19   nonmedical source) testimony concerning a claimant's ability to work.  *See Dodrill v. Shalala*,

20   12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(a)(4), 404.1527(f).  Indeed, "lay

21   testimony as to a claimant's symptoms or how an impairment affects ability to work is

22   competent evidence ... and therefore *cannot* be disregarded without comment."  *Nguyen v.*

23   *Chater,* 100 F.3d 1462, 1467 (9th Cir.1996) (citations omitted).  "If the ALJ wishes to discount

the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

The ALJ discounted Mr. Goodman's statements on the grounds that "[w]hile his statements may reflect his personal observations of the claimant, the medical evidence of record does not support finding greater limitations than those set forth in the above residual functional capacity." Tr. 57. This was not a valid reason to reject Mr. Goodman's statements. An ALJ may reject lay witness testimony where it is inconsistent with medical evidence. *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005). However, the ALJ may not discredit lay testimony simply "as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009); *see also Smolen*, 80 F.3d at 1289 ("The rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records."). Here the ALJ does not point to any specific evidence that contradicts Mr. Goodman's statements. Rather, as in *Bruce*, 557 F.3d at 1116, the ALJ appears to improperly "discount in general the value of lay testimony in comparison to objective medical evidence." *Staley v. Astrue*, No. 09-1424, 2010 WL 3230818 (W.D. Wash. July 27, 2010). Moreover, even if the ALJ had discounted Mr. Goodman' statements as inconsistent with the medical evidence, several of the medical opinions here must be reevaluated on remand. Accordingly, the ALJ erred in discounting Mr. Goodman's statements on this basis. Moreover, this error was not harmless as the ALJ failed to properly reject or account for all of the limitations described by Mr. Goodman in the RFC or in the hypothetical to the VE. *See Marsh*, 792 F.3d at 1173.

Accordingly, on remand, the ALJ should also reevaluate Mr. Goodman's statement.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 28

**E. Scope of Remand**

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, there is conflicting evidence in the record and it is not clear that the ALJ would be required to find Ms. Goodman disabled if the medical evidence, lay opinion evidence and her own testimony were properly considered. Because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate: (1) the VA's disability rating taking into account the 2015 final decision; (2) Ms. Goodman's physical impairments at step two and subsequent

steps to the extent provided above; (3) the opinions of Dr. Hohenegger, Dr. Higgins, Dr. Hale, Dr. Nelson, and Dr. Reade, to the extent provided above; (4) Ms. Goodman's own testimony; and (4) Mr. Goodman's lay statement. The ALJ should reassess and determine the RFC, and reevaluate steps four and five with the assistance of a VE as necessary.

DATED this 15th day of June, 2017.

JOHN C. COUGHENOUR
United States District Judge